210-1250, Edmar Heating and Cooling v. Sinmec. You may proceed. Thank you and good morning. Brad Elwood on behalf of Edmar Heating and Cooling. We're here today to ask the Court largely to take a look at an issue which is manifest way of the evidence issue that addresses the causation and significantly the petitioner's, as we would put it, lack of credibility. The brief raises several issues and for the purposes today we'd largely like to stand on the brief but focus on the causation and the credibility issues. We're asking the Court to reverse the commission majority on the issue of causation because we believe that the arbitrator was correct and the sending commissioner was correct, that the petitioner lacked credibility. We think that an opposite result is clearly apparent in this case. And we would acknowledge that the manifest weight standard has at times been characterized as is there some evidence to support what the commission has done. But I would put to the Court any time that you have a consideration that an opposite result is clearly apparent, the standard isn't that all evidence must support a reversal. The standard is that a majority or actually must be clearly apparent from the evidence. So I think the wording of the standard itself acknowledges that there will be some evidence that might favor the claimant. And in this case it's our opinion that the record as a whole shows that the arbitrator's findings should have been affirmed by the commission. And when we look at this case, we can really summarize it as this. The claimant had a preexisting condition with his low back. This was documented at pages 10 through 12 of the main brief and documented by the arbitrator. He had significant chiropractic care for about six years. He had a car accident. He had numerous incidents where he had aggravations and flare-ups resulting from golfing. And those were recorded in Dr. Dickholz's records, Respondents Exhibit 2. And they were also referenced in the IME report, Dr. Wehner. If we could stop there for a second. Sure. And obviously the golf incident is in the mix. But obviously you acknowledge under CISPRO that a work-related incident that aggravates or accelerates a preexisting condition is still compensable. Yes. So that is an indisputable fact. Yes. So you have, you said the golf caused a flare-up of the condition. Is that an independent intervening cause that would as a matter of law cause him to lose compensation? I think it is in this case because here we don't have the need for surgery arising until after the October incident. We have a gentleman who sustains his work accident in June of 2006. He undergoes an MRI shortly thereafter. It shows the degenerative condition, the bulging disc, a herniated disc, depending on how you want to look at it. But he receives an injection. He's doing well. He returns to, as we would put it, he returns to a baseline condition. But then he goes and golfs 36 holes in a two-day period. And he has a substantial increase in his pain. And then within a year we have Dr. Bernstein saying that he needs surgery. And so we do think it Let's go to his baseline. What do you determine to be his baseline condition? I think his baseline condition is he has ongoing low back pain, ongoing pain radiating to the lower extremities. It's documented dating back into the early 2000s and late 1990s. And if you look, when we look at the chiropractic records, we see those complaints continuing and continuing and continuing. And so we think that that is the baseline condition, that he does have some residual problems that continue on. And so it's our opinion that prior to this golf incident he did reach his baseline, which may have involved some base levels of discomfort. But that doesn't mean that that's related to this incident. Howard, legally is there a difference between an independent intervening cause and a contributing cause, in your opinion? Is there a difference there? Is there some legal difference there? I would think that, yes, in my opinion, I think a contributing cause, maybe I'll try to define these and see if we're on the same page. I think a contributing cause, if I'm a piano player, and I have a second job and I play piano extensively, but I work at a checkout counter, and I also use my wrists, I develop carpal tunnel at work, a contributing cause would be the fact that I was a piano player on the side and used my wrists. That wouldn't take away, under the current Illinois standards, my claim for carpal tunnel against my employer as a cash register. An intervening act would be something that takes place that changes the condition that the individual has and requires, that superimposes a different type of treatment or a need for a change in the condition, the treatment to take care of that condition. And so I think that's what we have here. That's how I would define the two. But in the context of this case, though, why couldn't the golfing incident be a contributing cause as opposed to independent intervening cause that breaks the chain of causation? Why isn't the golfing incident a contributing cause? In Bernstein, certainly, there's evidence in the record, Bernstein opined, that the work-related incident or accident did permanently aggravate the preexisting condition. So there's some medical testimony in the record to support the commission, correct? According to Dr. Bernstein. I'll address that in a second. But yes. What about this? Why isn't it a contributing cause, the golf incident? Because we have a very significant activity that takes place, and we can define it to a specific time in October of 2007, and we can say that his condition changed at that point. And unless I'm reading the record wrong, there was no real need for surgery in this gentleman until after that time. So I think that's a changing event. So I think that a contributing event I would characterize as one that takes place concurrent with the original event, the original 2006 accident, the hypothetical that I gave the Court in response to your question. Who do we have on the medical side that supports that analysis you're giving us? Well, I think Dr. Wehner, if I pronounced your name right, supports the position. And, Your Honor, you made a comment to Dr. Bernstein. And obviously the commission majority relied upon him and found him to be more credible. It's our position that we cannot consider his opinions as credible, because when we look at what information was given to him by the petitioner, the record is clear that he did not have a full set of facts. He was not told about the prior back problems, the back injuries. He was not even told about this golf incident. And we think that you cannot look at Dr. Bernstein's opinions in a vacuum. And he did look at the situation here in a vacuum. So we think, as the arbitrator found, the petitioner was not truthful in talking to Dr. Bernstein or some other doctors in this case about what his real condition was. Let me make an interesting point that runs through the theme of all these cases. What you're saying is, and it has some intuitive appeal, is that the doctors or any medical opinion is really only as good as the underlying information or data. Exactly. Upon which it's based. Yes. But do you have any cases that say that and the commission cannot rely on it unless the foundation is true or accurate? I don't know that I've seen any cases that specifically say that. I'm not aware of any off the top of my head. I'm not saying there's not any out there. I would be happy to look at that and supplement, if I find something, very quickly to the court. I understand you need to make a decision. But I would be happy to see it. Say that. Yeah. But I think it goes to the basis of when we come in and we're saying. You're saying Bernstein, because Bernstein didn't know about the golf activity. That's the thing that you're saying that Bernstein. That as well as the prior. Should be not given as much weight. That as well as the prior chiropractic and the prior treatment that was given. And I think it's interesting, too, to take a look at. The arbitrator found the petitioner wasn't clever. Did he review Dr. Dick Holtz's records? He did. I believe from what I could glean from it. He did at the deposition. But I think he also acknowledged it was a very cursory examination of them. I don't think there was any real study of them. But I guess in a realistic, practical sense, I guess I wouldn't expect to see that anyway. I wouldn't expect him to change his opinion in any event. That's the practicality of what we do here. But I would also point out that the arbitrator in this case found that the petitioner was not credible. And one of the things that he looked at was the comments that he made to Dr. Bernstein, but also the way the petitioner was confronted at the arbitration about the prior chiropractic. And he just refused to acknowledge that he had any prior injury, that he had any prior treatment, that he had any prior back problems. He said it's all muscular in nature. And when you look at his testimony in the record, it's some of the most evasive testimony that I've seen. And I think the arbitrator saw that. The arbitrator made his conclusions, coupled that with Bernstein treatment, coupled that with his whole elusiveness of the golf outing, and said, I don't believe this guy. Now, that brings us to the argument that we made in our brief about an alternative standard of review. We've had many discussions of that, and I think I know where the Court stands. But when we look at the R&D Thiel case, one of the things that you said was when the Industrial Commission reverses an arbitrator on the issue where there's been a specific kind of credibility, and they don't address that credibility in their opinion, that the Court should remand that back to the Commission. Well, I would say in this case, I would have to say I wouldn't ask for a remand, but I think in this case there's no real explanation in this Commission decision as to why they're bypassing this whole assessment of credibility. They make some comments, and I'll try to address those before my time gets up here. They make some comments on why they want to change. Remember, they never address the issue of credibility. And I think with this record, I would urge the Court not to remand this matter, but just to say, look, we have a decision from the arbitrator, and at least one Commissioner, reverse this thing and reinstate the arbitrator's decision. Now, when I look at the four grounds that the majority gave, one of them I found kind of troubling in the light of this case. One of the things that they relied heavily on was that the claimant had a substantial history. They said while the claimant had a substantial history of low back problems, the arbitrator failed to note that there was no evidence of any treatment of low back problems from 2003 to 2006. Now, I thought that might kind of grab your attention a little bit, and I think in this case, given the issues that my opponent has tried to raise on an independent cross appeal, relating to the difficulties that counsel had in this case, trying to obtain medical records, trying to complete medical records, I think this is a clear situation. When we have consistent chiropractic and medical treatment year after year after year, and then we have a gap, the only answer isn't that the guy is doing great, he's better, he's fine. The answer is that we just couldn't get our hands on it. And you know we don't have discovery. There's no way we can send interrogatories and say who have you treated with. We can't do that. So I think that that 2003 to 2006 gap, I don't think it means anything. The second thing the commission looked at was that the symptoms never went away after the injections. Why? Completely went away. We talked about that. I would point the court to Dr. Maggie's October 22, 2007 entry where he discusses that a little bit. We talked about Dr. Bernstein's opinions that they said were credible, and we've also talked about the fact that the commission found there was no indication that he re-injured his back. We think, again, when you look at the October 22 record of Dr. Maggie, that he clearly did sustain a substantial injury in that golf outing. Now, I said there were two things I wanted to talk about, and real briefly. I'll mention it this way, and perhaps my opponent can elaborate on it, and I can address it in a rebuttal. But we petitioners filed a cross appeal, what we believe is a cross appeal. We moved to dismiss that, or to strike that, and strike portions of the brief. I think the key is were they trying to get additional relief? Were they trying to get additional award, additional recovery? They were trying to get attorney's fees. They were trying to get sanctioned. It's not an alternative argument to support what was done below. They're asking for additional relief. In those cases, that situation, the cases have been consistent over and over that they have to file a notice of cross appeal or an original appeal. We moved to consult it. They didn't do that. I'll be happy to address that more on rebuttal if that becomes an issue. Otherwise, we would ask the court to take a very close look at the issue on causation and to reverse the commission majority and reinstate the arbitrator's decision. Thank you. Thank you. Good morning, Justice. My name is Richard Hannigan. I represent the appellee. This case involves questions of law and fact, and this court has long held that the commission has original jurisdiction. They'll resolve those questions of fact. The appellant's attorney has in the past made the same argument that the court should exercise an extra degree of scrutiny when the commission reverses an arbitrator on the credibility of a witness, and this court has consistently held that it does not allow for extra scrutiny, and that the appropriate scrutiny for it to do so would be to legislate from the bench. Now, my opponent has consistently argued and painted a picture that conveys the impression that my client has treated for back pain up until the date of his accident. We know that's not true. How do we know that, though? Counsel wants me to prove a negative. He wants me to prove that my client did not have back treatment. I can't prove a negative. But what I do know is those medical records that they had from the family doctor, returnable directly to their office, shows treatment during those three years before the state of accident, and nowhere in those records when we know that my client has diarrhea, when we know that my client has the flu, when my client has an infection, we know that he didn't complain at all about his back. So to say that there's a gap in the records, a gap in treatment, is to say that on June 6, 2003, my client decided to treat for his back elsewhere and planned his June 20, 2006 accident, put enough time between the doctors, and he made it. I stand here today and I tell you, my client does not have that capability. Counsel, what do you make of counsel's argument that the golf incident was some independent intervening event that broke the chain of causation? I have a real hard time with that argument, Justice, because the MRI was performed beforehand. Dr. McGee says before the golf outing and before that first epidural steroid injection that he had a full-blown herniated disc. Also, how do you explain that he starts physical therapy in September, ends it at the end of October, and golfs around October 17th? It doesn't end, and in fact, in Dr. Perlmutter's records, it says, going through the airport on the plane, my back was hurting. What I have a problem with is my client really isn't the best communicator. And when you look at the physical therapy records, they say, in the October 19th, I think, entry, that he had improvement in his pain. Yet about two sentences down, it says he was pain-free for one month. Now, that's what the therapist recorded. And Dr. Werner and the arbitrator latched on to he was pain-free for one month. That's a question of fact. And that fact was resolved in favor of my client by the commission. Which month was it? Was that right before he went? That was before and after. When they had the history of pain-free, after the golf outing. After? After the golf outing. It starts out with he had improvement in his pain. Well, he had an epidural, didn't he? He had an epidural. And as Dr. Bernstein testified, you inject it with this anesthetic and it does its job. But eventually wears off. And did he not schedule another epidural before he left? Before he left for Texas for this golf tournament that he played in 2003, 2004, 2005 without any problem, he called and he asked the adjuster for authorization for the second epidural injection. It's not consistent to say that. He has now had an intervening event. This is no different than the case Tesca that I cited where this woman had a herniated disc MRI diagnosed before she went bowling. When she went bowling, she threw the ball and that was the last day she worked. That was a contributing event and this court held but for the work injury. There would have never been a problem. But for the work injury, my client would have had no problem just as he had no problem in 2003, 2004, and 2005 when he went golfing. It's a red herring and it's a fact question. What do you have to say about his argument that he failed to file a cross appeal? Therefore, you have no basis for arguing that you should have been awarded sanctions. I think if we look at the case law that my request for attorney's fees and penalties would be correct. But I have a hard time reconciling the case law with section 19F which states that the court shall by summons to the commission have the power to review all questions of law and fact presented by the record. It doesn't limit it to cross appeals. So I believe that the entire record is before this court and this court has the power to do that, to award the sanctions. Don't the cases stand for the proposition of candidly that the appellee may challenge the adverse ruling by the commission? You need to file the cross appeal. I mean this isn't you're citing cases that say well we can affirm on any basis in the record but you're taking the cross appeal. Right. It's something that I beat myself up about. Right. I mean you see the dilemma. I do. But I don't see it as a dilemma as far as the commission not sanctioning the respondent for the violation of the petitioner's privacy rights. Because the respondent is now arguing before you Dr. Werner's deposition and Dr. Werner's opinion which was gotten where she didn't follow section 12 properly and which relied upon these records that were ill gotten. But that still requires affirmative relief over and above an affirmance of what the commission did. But Justice in this particular case I had won on that issue. I won on that issue. And in landmarks that I cite where they didn't raise the affirmative defense, their motion to dismiss on appeal, the court held that they won on that issue. They can now raise it. They are arguing records that should have been sanctioned. You can argue that they shouldn't be arguing those records. You can't argue that they should have been sanctioned for it. Sanctioning is an affirmative relief. That's more than the evidentiary ruling. Now, they weren't sanctionable, were they? They weren't sanctioned. And you want them sanctioned. When they are, yes. That's affirmative relief. Well, I contend in my argument today, though, that they should not be allowed to argue before this court the records that were given to Dr. Werner. I will continue to argue that because of Vernon Best, they had no right to take the family doctor records and take these subpoenas. And we don't know how many other subpoenas were issued to how many other doctors because they argue that they can be returned to the defense attorney's office without giving anybody notice. That's just wrong. Just absolutely wrong. They say they don't have discovery. This whole case is about their discovery. We did not try and keep any records from the respondent. The first 10 pages in our transcript were before Arbitrator Lammy. And we are stating, bring the records to the arbitrator, let him be the gatekeeper. And their argument was, no, we're the gatekeeper. And they then issued those subpoenas without copying anyone, without being returnable to an arbitrator, to be returnable to their office. Counsel wasn't present during Dr. Bernstein's deposition. I was. Dr. Bernstein took a great deal of time to review all of those records. And he is the only one who reviewed those records. And the petitioner didn't keep his history of a prior back condition from the treating doctor, from Dr. Dickholz. He even told the adjuster where he's going. He's going to see Dr. Dickholz. And he made the appointment and saw Dr. Dickholz that afternoon. And the family doctor, Dr. Dior, he treated the petitioner for his back problem in 1995. Nothing was kept from these people. And as he was referred out, those things did not come up. So I would ask that you not consider the respondent's report from Dr. Werner, Dr. Werner's testimony. I also ask that you question, why didn't Dr. Werner be given an opportunity to review those medical records that they had regarding the prior treatment? Or maybe, or maybe she did review them and they didn't ask that question. Because when that deposition was taken, those records never saw the light of day. Those records saw the light of day after Dr. Bernstein's deposition. Thank you. Rebo? I had two points I wanted to touch upon. First, concerning the citation to 19F in the Cross Appeal. When we look at 19F, and I think they even cited the Hurt case in their response to our motion to strike and motion to dismiss. Hurt is the case that explains this process. When you look at 19F1, it talks about the circuit court shall have by summons the power to review all questions of law and fact presented by the record. That's a different question than whether it's this court. And we cited numerous cases, Ruff, Burgess, Clay, City of Wilmington. All those support the position we're advocating. The landmark case that they cite is a case where they were simply arguing an alternative reason to dismiss the complaint. It happened to be standing that they'd lost earlier. That's a different situation than what we have here today. The other comment I want to make is, can we win this case if you don't find the golf incident to be an intervening accident? I think we can. Because there's a substantial element of the arbitrator's decision that focuses on lack of credibility. And that has to do with what he told Dr. Bernstein. And it has to do with how he responded to the direct questions of counsel at arbitration about what his prior record showed. The arbitrator didn't believe the guy. And I think that's substantial. And the commission never articulated a grounds as to why they were going to overrule that finding. When, as we know, the only people that sat there and saw that guy testify was the arbitrator. So for those reasons, we would ask this court to reverse. Thank you. Thank you, counsel.